UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| TODD A. BARBER,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner, Social Security<br>Administration,<br><br>　　　　　　Defendant. | CIV. 14-5086-JLV<br><br><br>ORDER |

**INTRODUCTION**

Plaintiff Todd Barber filed a complaint appealing from an administrative law judge's ("ALJ") decision denying disability insurance benefits.   (Docket 1).  Defendant denies plaintiff is entitled to benefits.   (Docket 10).   The court issued a briefing schedule requiring the parties to file a joint statement of material facts ("JSMF").   (Docket 12).   The parties filed their JSMF.   (Docket 13).   The parties also filed a joint statement of disputed material facts ("JSDMF").  (Docket 14).   Following the completion of court ordered briefing, the plaintiff filed a motion for remand pursuant to 42 U.S.C. § 405(g) based on new and material evidence.   (Docket 19).   Defendant resists plaintiff's remand motion.  (Docket 22).

For the reasons stated below, plaintiff's motion to remand (Docket 19) is granted.

**FACTUAL AND PROCEDURAL HISTORY**

The parties' JSMF (Docket 13) and JSDMF (Docket 14) are incorporated by reference.   Further recitation of salient facts is incorporated in the discussion section of this order.

On January 19, 2012, Mr. Barber filed an application for disability insurance ("DI") benefits alleging an onset of disability date of July 6, 2009. (Docket 13 ¶ 1).   On July 31, 2013, the ALJ issued a decision finding Mr. Barber was not disabled.   Id. ¶ 10; see also Administrative Record at pp. 11-24 (hereinafter "AR at p. ____").   On September 22, 2014, the Appeals Council denied Mr. Barber's request for review and affirmed the ALJ's decision.   (Docket 13 ¶ 12).   The ALJ's decision constitutes the final decision of the Commissioner of the Social Security Administration.   It is from this decision which Mr. Barber timely appeals.

The issue before the court is whether the ALJ's decision of July 31, 2013, that Mr. Barber was not "under a disability, as defined by the Social Security Act, from July 6, 2009, through [July 31, 2013]" is supported by substantial evidence in the record as a whole.   (AR at p. 24) (bold omitted); see also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole.   42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580.   The court reviews the Commissioner's decision to determine if an error of law was committed.   Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992).   "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."   Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision."   Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence.   Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005).   A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' "   Reed, 399

F.3d at 920 (quoting <u>Shannon v. Chater</u>, 54 F.3d 484, 486 (8th Cir. 1995)).

Issues of law are reviewed *de novo* with deference given to the Commissioner's

construction of the Social Security Act.   <u>See</u> <u>Smith</u>, 982 F.2d at 311.

The Social Security Administration established a five-step sequential

evaluation process for determining whether an individual is disabled and entitled

to disability benefits under Title II.   20 CFR § 404.1520(a).   If the ALJ

determines a claimant is not disabled at any step of the process, the evaluation

does not proceed to the next step as the claimant is not disabled.   <u>Id.</u>   The

five-step sequential evaluation process is:

> (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

<u>Baker v. Apfel</u>, 159 F.3d 1140, 1143-44 (8th Cir. 1998).   The ALJ applied the

five-step sequential evaluation required by the Social Security Administration

regulations.   (AR at pp. 20-21).

### **STEP ONE**

At step one, the ALJ determined Mr. Barber had not been engaged in

substantial gainful activity since July 6, 2009, the alleged onset date.   <u>Id.</u> at

p. 13; <u>see</u> <u>also</u> Docket 13 ¶ 275.

**STEP TWO**

At step two, the AlJ determined Mr. Barber had the following severe impairment: "degenerative disc disease in his lumbar spine with right lower extremity radiculitis . . . ."   (AR at p. 13; see also Docket 13 ¶ 276).   Mr. Barber does not challenge this finding.   (Docket 16).

**STEP THREE**

At step three, the ALJ determines whether claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 ("Appendix 1"). 20 CFR §§ 404.1520(d), 404.1525, and 404.1526.   If a claimant's impairment or combination of impairments meets or medically equals the criteria for one of the impairments listed and meets the duration requirement of 20 CFR § 404.1509, the claimant is considered disabled.   A claimant has the burden of proving an impairment or combination of impairments meets or equals a listing within Appendix 1.   Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004).

The ALJ found Mr. Barber's "degenerative disc disease in [his] lumbar spine and his right lower extremity radiculitis does not meet or medically equal the requirements of section 1.04."   (AR at p. 14).   The ALJ concluded "[t]he medical evidence does not establish that he exhibits evidence of having nerve root compression in his lumbar spine with motor loss accompanied by reflex or sensory loss.   He does not have positive straight leg raising tests.   The medical

evidence does not establish that he has spinal arachnoiditis[1] in his lumbar spine or lumbar spinal stenosis resulting in pseudoclaudication."[2]   Id.

Mr. Barber argues the ALJ erred by "fail[ing] to consider the specific criteria of Listing 1.04A . . . ."   (Docket 16 at p. 22).   He asserts the ALJ should have considered the following:

> Evidence of <u>nerve root compression</u> characterized by <u>neuro-anatomic distribution of pain</u>, <u>limitation of motion</u> of the spine, <u>motor loss</u> (atrophy with associated muscle weakness or muscle <u>weakness</u>) accompanied by <u>sensory</u> *or* <u>reflex</u> loss and, if there is involvement of the lower back, <u>positive straight-leg raising</u> test (sitting and supine). . . .

Id. at pp. 22-23 (citing Appendix 1, Listing 1.04(A)) (emphasis and italics added by Mr. Barber).   In the alternative, Mr. Barber claims the ALJ should have applied Listing 1.00(H)(4).   Id. at p. 24.   That Listing provides:

> Evaluation when the criteria of a musculoskeletal listing are not met.   These listings are only examples of common musculoskeletal disorders that are severe enough to prevent a person from engaging in gainful activity.   Therefore, in any case in which an individual has a medically determinable impairment that is not listed, an impairment that does not meet the requirements of a listing, or a

---

[1]"Spinal arachnoiditis is a condition characterized by adhesive thickening of the arachnoid which may cause intermittent ill-defined burning pain and sensory dysesthesia, and may cause neurogenic bladder or bowel incontinence when the cauda equina [the collection of spinal roots that descend from the lower part of the spinal cord] is involved."   Appendix 1, Listing 1.00(K)(2)(a).

[2] "Pseudoclaudication, which may result from lumbar spinal stenosis [a condition that may occur in association with degenerative processes, or as a result of a congenital anomaly or trauma . . .], is manifested as pain and weakness, and may impair ambulation."   Appendix 1, Listing 1.00(K)(3) (italics omitted).

combination of impairments no one of which meets the requirements of a listing, we will consider medical equivalence.

Appendix 1, Listing 1.00(H)(4).

Mr. Barber argues imaging of his spine "showed facet disease and capsulosynovitis, desiccated discs and annular tear, spondylolisthesis and retrolisthesis, Modic changes, and multiple Schmorl's nodes." (Docket 16 at pp. 24-25) (referencing Docket 13 ¶ 201). Because of these "multiple symptomatic spine abnormalities[,]" Mr. Barber claims the ALJ should have assessed medical equivalency at step three and found he is disabled at this step. Id. at p. 25.

One of the important questions in this case is whether Mr. Barber was a viable candidate for spinal surgery. On July 18, 2011, neurosurgeon Dr. Ingraham charted that Mr. Barber suffered "discogenic and facetogenic back pain with abnormal motion at L4-5 and some foraminal stenosis." (Docket 13 ¶ 213). Dr. Ingraham recommended "a lumbar fusion and decompression at L4-5 with instrumentation and transforaminal lumbar interbody fusion." Id. On September 29, 2011, orthopedic surgeon Dr. Schleusener concluded Mr. Barber was not a good candidate for lumbar fusion surgery. Id. ¶ 215. Dr. Schleusener opined that even "a multilevel fusion . . . is not going to make [Mr. Barber] that much more functional." Id.

As of July 9, 2013, the date of the administrative hearing, Mr. Barber had not had spinal surgery. It was on this status of the record that the ALJ issued an adverse decision to Mr. Barber on July 31, 2013.

7

On December 12, 2014, orthopedic surgeon Dr. Jensen conducted an independent medical examination of Mr. Barber for the attorney representing Mr. Barber's worker's compensation carrier.   (Docket 14 ¶ 1).   Dr. Jensen concluded "[t]he surgery offered by Dr. Ingraham would be only part of the surgery necessary.   He would benefit more [from a] L4-5, L5-S1 decompression and fusion.   If the L5-S1 level is left untreated with the isthmic spondylolisthesis, I think this could potentially lead to further degenerative changes and compressive neurological problems. . . . I think he needs a 2-level fusion not a 1-level fusion."   Id. ¶ 6.

While the case was on appeal to this court Mr. Barber had spinal surgery. (Docket 20-1).   On July 16, 2015, Dr. Ingraham performed a two-level fusion at L4-L5 and L5-S1 and a laminectomy[3] with medial facetectomy[4] and foraminotomy[5] at L4-L5.   Id. at p. 1.

---

[3]A laminectomy "creates space by removing the lamina—the back part of the vertebra that covers your spinal canal.   Also known as decompression surgery, laminectomy enlarges your spinal canal to relieve pressure on the spinal cord or nerves."   http://www.mayoclinic.org/tests-procedures/laminectomy/ basics/definition/prc-20009521.

[4]"Medial facetectomy is a spinal procedure that partially removes one or both of the facet joints on a set of vertebrae.   The procedure intends to decompress the spinal nerves being pinched by degenerated facet joints." www.spines.com/procedures/medial-facetectomy.

[5]"A foraminotomy is a decompression surgery that is performed to enlarge the passageway where a spinal nerve root exits the spinal canal."   http://www .spineuniverse.com/treatments/surgery/foraminotomy-taking-pressure-spinal- nerves.

After this surgery Mr. Barber filed a motion to remand his case to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g).   (Docket 19).   He argues the evidence concerning the surgery was "not available during the administrative proceedings" and there exists "good cause" for remand under § 405(g).   Id.   Mr. Barber claims this surgery "is probative of a disabling musculoskeletal condition" and "would more than likely change the Commissioner's determination . . . ."   (Docket 21 at pp. 2-3).

The Commissioner opposes plaintiff's motion.   (Docket 22).   Defendant argues "[n]ot only was the evidence not generated during the relevant period, the evidence was not even created in close proximity to the relevant time period." Id. at p. 2.   Citing Whitman v. Colvin, 762 F.3d 701, 709 (8th Cir. 2014), as authority for her position, the Commissioner contends that "[i]f medical evidence that postdates the relevant period by only *five* months does not shed light upon a claimant's condition during the relevant period, then it follows *a fortiori* the instant surgical report is likewise irrelevant."   Id. (italics in original).

Sentence six of § 405(g) provides: "The court may . . . at any time order additional evidence to be taken before the Commissioner . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."   42 U.S.C. § 405(g).   In a sentence six remand, "[t]he district court does not affirm, modify, or reverse the [Commissioner's] decision; it does not rule in any way as to the correctness of the administrative determination."

Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991).   "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding."   Id.

In Whitman, the court addressed whether a number of medical records were new evidence under § 405(g).   The first item, a physician's note which existed before the administrative hearing, was cumulative to "other evidence already in the record" and "describing symptoms five months after the date last insured."   Whitman, 762 F.3d at 709.   The second item was "partially cumulative" and was similarly related to a lumbar condition which "post-date[d] Whitman's last date insured and thus do[es] not relate to the denial period at issue."   Id.   The final three medical records were not cumulative, but related to examinations "almost a year after the ALJ hearing and sixteen months after the date last insured."   Id.   Without deciding whether these final three medical records were new evidence which was "material, non-cumulative, and related to the denial period at issue," the court concluded the claimant "failed to show 'good cause for the failure to incorporate such evidence into the record in a prior hearing.'"   Id. at 710 (citing 42 U.S.C. § 405(g)).

The Commissioner's reliance on Whitman is misplaced.   In the present case, the ALJ concluded Mr. Barber's "earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2013.   Thus, the claimant must establish disability on or before

10

that date in order to be entitled to a period of disability and disability insurance benefits." (AR at p. 11). The court finds the July 16, 2015, report of surgery relates back to Mr. Barber's condition during a period of insurability and most accurately describes the nature and extent of his spinal condition. Without the vantage point of surgery, no physician was truly able to determine the nature and full extent of Mr. Barber's condition. It was only after surgery that Dr. Ingraham could conclusively determine the physiological condition of Mr. Barber's spine and the extent of the surgical intervention necessary. The court finds the medical records are "[m]aterial . . . noncumulative . . . and probative of [Mr. Barber's] condition for the time period for which benefits were denied . . . ." Krogmeier v. Barnhart, 294 F.3d 1019, 1025 (8th Cir. 2002). It would be unfair to both Mr. Barber and the Commissioner for the court to engage in speculation or conjecture as to how the ALJ would evaluate the new evidence, but there is a "reasonable likelihood" that these records would have an impact upon and change the Commissioner's decision. Id. See also Woolf v. Shalala, 3 F.3d 1210, 1215 (8th Cir. 1993) ("To be material, new evidence must be non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the Secretary's determination.").

The court finds good cause exists under § 405(g) as this new evidence could not be presented during the hearing before the ALJ. Krogmeier, 294 F.3d at 1025 (referencing Buckner v. Apfel, 213 F.3d 1006, 1010 (8th Cir. 2000). The

court finds this new evidence is relevant to step three as to whether Mr. Barber satisfies the medical equivalency provision of Listing 1.00; step four as to Mr. Barber's credibility and the resulting RFC; and step five as to whether Mr. Barber is disabled.   It would be unfair and prejudicial to both parties to not require the Social Security Administration to properly develop the full record in the particular factual circumstances of this case.   Haley, 258 F.3d at 750 ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial.") (internal quotation marks and citation omitted).

### ORDER

Based on the above analysis, it is

ORDERED that plaintiff's motion (Docket 19) is granted.   Pursuant to sentence six of 42 U.S.C. § 405(g), the court remands this action to the Commissioner for further administrative proceedings.

IT IS FURTHER ORDERED that the Commissioner shall provide Mr. Barber with a *de novo* hearing before an administrative law judge.   The ALJ shall obtain and admit evidence of Mr. Barber's July 16, 2015, hospitalization and surgery at the Black Hills Surgical Hospital (Docket 20-1) and any additional evidence which relates to the physiological consequences of that surgery.

IT IS FURTHER ORDERED that the ALJ shall evaluate the newly admitted evidence and reevaluate Mr. Barber's claim at steps three through five of the sequential evaluation process for determining whether an individual is disabled and entitled to disability benefits under Title II.   20 CFR § 404.1520(a).

IT IS FURTHER ORDERED that, following the completion of further administrative proceedings, the ALJ shall modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.   See 42 U.S.C. § 405(g).

IT IS FURTHER ORDERED that the United States Attorney's Office shall file a status report every ninety (90) days as to the progression of the case on remand, beginning on **June 22, 2016**.

Dated March 24, 2016.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE

13